Please proceed. Thank you, your honor. May it please the court, Devin Burstein on behalf of Ms. Gilmore. Can I just ask you, were you the trial counsel in this case? I was the pro bono counsel. You were the pro bono counsel. Now, were you the one that was going to substitute in as the second lawyer or were you the one that was originally appointed? I was the one who was going to join for the trial as the second pro bono lawyer. You said pro bono. This was not being paid by the Mr. Burstein, Mr. Warren. Mr. Warren was CJA appointed counsel. I was going to come in to try the case with him as is commonly done with two lawyer trials. I was going to come in to try the case with him on behalf of Ms. Gilmore as second counsel for her pro bono. Oh, so you were not asking to be paid? I was not asking to be paid. Did the judge understand that? Absolutely. Burn the record with your sinus to that. Yeah. There's the docket sheet and I think as Judge Winn will know from I assume your days on district court, on CJA matters, you can't just walk into court with a second lawyer or an expert or an investigator and say, pay this person to the CJA. You have to do a motion ahead of time. You have to request funds for second counsel. That was never done here. I understand, but as I understand it- We all know that. You do understand that the Ninth Circuit judges review the payment of CJA vouchers and in my three years- I have that current privilege. I know Judge Smith is doing it now for this. My only point was that for ahead of time, not post trial review, but ahead of time, you have to get pre-authorization from the district court for these types of things. What confuses me here is, again, just reading the record- I understand. My understanding is that literally on the eve of trial, your partner said to the judge, I've got Mr. Burstein and he's going to help me with the trial and Judge Burns, right? No, Judge Huff. Okay. Wait a minute. You don't need a second lawyer in this and he said, well, he's my partner. I want him to be involved in this and he's just on the CJA panel. So when I saw that, I thought, well, wait a minute. That means he's a lot of experience. You're not just learning stuff and nobody talked about whether you get paid or not, but CJA lawyers generally get paid. Whose burden is it to establish that, whether you get paid or not? It would be the- it's a hard question to answer on the facts of this case. It would be our burden. That's an easy answer. But there are a couple red herrings in the government's brief, and I know my friend didn't write that brief, and they seem to have been effective red herrings, and I would like to take some time to dispel them so that we're not getting lost from the true Sixth Amendment issue here. First one is this pro bono- Let's start out. I'd like to know, is your position that it is a Sixth Amendment right to have two counsel if there's no issue of payment? Yes. That if a defendant wants to have two counsel, he has a Sixth Amendment right to have both counsel take speaking roles? Absolutely. And what's the authority for that? Lane Fiesta, for example, from the Second Circuit, that was a denial of cross-examination. Even Gonzales-Lopez is a two-lawyer case. Gonzales-Lopez is a Supreme Court case. Yeah, that was disqualification to participate at all. In this case, you were allowed to sit at counsel table, right? I would have been permitted to sit at counsel table. You could have passed notes? Yes, Your Honor. And basically what Judge Huff was saying, there's going to be one attorney speaking, examining witnesses, and presumably arguing at close. Right. That is the violation. Okay. And did the U.S. attorney have two attorneys? Not on this case, but routinely, almost always, I mean, and Your Honor knows, almost always the U.S. attorney does have two lawyers. And the Federal Defender's Office can put two or three lawyers. So we have this one sliver of CJA-appointed cases where there's not the same right. Is that right? Is that the rule in Judge Huff's court? It is her general practice that she doesn't... One lawyer. It doesn't let a second lawyer. And absolutely, Lane Fiesta answers this question from the Second Circuit. They said... Do you think Second Circuit controls this? Of course not. But it's certainly persuasive. And you find it so. I guess my concern is, did the defendant ask for you? Yes. Where is that in the record? Your Honor, it's impossible to put that in the record because the moment Mr. Warren raised this issue, he's cut off mid-sentence. And that was a couple of the red herrings I wanted to get to. The government does an excellent job of putting the two sections where this is discussed in one page of their brief. But they're separated by 30... Before you get in that, I just want to take this sequentially. You've indicated that it was not your intention to get paid, even though your partner said, he's my new partner. And the implication is, hey, he's my partner. Partners get to share each other's revenues. You agree that it was your burden to establish whether you get paid, which was not met here. I asked whether the defendant had asked for you. There's no question there's a Sixth Amendment right for somebody to have in a non-government paid situation, the lawyer of his or her choice. I see nothing in the record here that says that she asked for you. Does your partner have the right, as someone who has a financial interest in the transaction, since you are his partner, to commit someone else, in this case, the defendant, to have a second lawyer? It's the defendant's Sixth Amendment right, not my partner's, nor mine, nor... Okay, so if she didn't raise it, what does that do, if anything? Well, we all know the system would break down if it wasn't defendants speaking through their counsel. And if we can... Think about what I'm... Help me with this. Yes, Your Honor. What I'm dealing with is, from my perspective, a conflict of interest. Okay. You could have, you know, a CJA lawyer come in and say, I've got 10 new partners, they are great. I want them all to be with me here on this case. And not say whether the defendant wants them, but you're saying that that would create a Sixth Amendment right, because presumably that lawyer can commit the defendant to a request. Now, I understand completely. If she said, that guy Burstein is terrific, I really want him. That's different. She didn't even know you, did she? Yes, she did. Where's that in the record? Your Honor, if you... Can we look at page 19 of the record? Because you asked me where it is in the record. And I'm trying... And I'm looking at it. What I'm trying to tell the court is, Mr. Warren can't get through the first sentence. No, wait a minute. Before Judge Huff shuts him down. That's what happens. Mr. Burstein is here. Right. My, the court does interrupt. Right. He's just going to observe. And he won't do any of the questioning. You are the one that is appointed. And so he's not going to do any of the questioning. Right. Warren says, oh, all right. He's on the CJA panel, Your Honor. In other words, he's qualified to do a trial. No, he is not. I've appointed you. In other... Right. No, he is not. But I... You are on the panel. Correct. I've appointed you, Mr. Warren. Right. Judge Huff is not stupid. Not at all. She knows you're on the CJA panel, right? I don't. I had relatively recently left Federal Defenders, so I'm not sure if she knew. Okay. But in any event, you're not the one CJA attorney that she appointed. Correct. So I've appointed you. Right. And it's your responsibility. He's welcome to observe. Right. I understand. It's not a capital case. It doesn't warrant two lawyers. That's a CJA rule. That is a CJA rule. So you're saying she had to understand that you were going to do it pro bono. Absolutely, Your Honor. Because even though she's saying that you're the one that's appointed, and so the court has appointed you, Mr. Warren, that's fine. He's welcome to participate, observe, but not to question or do any of the activity in the case. Right. And then Mr. Warren says, I've done one or two trials in this case before by myself. Right. Okay? So you're saying that the record is clear that she knew she was designed your client's request to have you as a free attorney appear on her behalf. Your Honor, what I'm saying is, as it was raised, before the first sentence got out, Judge Huff ruled, and she ruled definitively. There's, she said, he's just going to observe, and he won't do any of the questioning. That's a definitive ruling. Remember, this is in the context of a bench trial. Judge Huff is then about to... presentation in her courtroom. She says, I'm going to have, you're the one who's appointed here. Okay? Right. And he says, he's on the CJA panel. You're saying, well, that's supposed to indicate to her that you're qualified. I understand that may be why he said it. It did, it was. Okay. But she treats it as, at least as my reading, as they're going to be two CJA lawyers on this, and because it's not a death penalty case, it doesn't warrant two CJA. I can understand that. You're complaining because she interrupted your partner. So can I get through my... I'm sorry, Your Honor. Yes. I'm trying to give you my reading of the transcript you invited us to read. I'm trying to put myself in Judge Huff's position. So looking at it, construing the inferences, maybe I'm totally wrong in giving her credit for something she wasn't thinking, but it appears to me that there was a good chance she thought you both wanted to discharge the CJA function, and therefore she would be getting bills from your firm that would be submitted for your time, and that you would therefore, you know, there's nothing in the record at this point, no volunteering by Mr. Warren to say, he's going to work for free, he's going to do this pro bono, we're not going to charge. Was that ever raised with her? Ever. No, Your Honor, because it was cut off immediately. But can I, can I... And did the trial start immediately? No, it started... Okay. Did you ever, did Mr. Warren ever file anything with the court to say, A, there's a Sixth Amendment right, and B, he was to clarify, Mr., my partner's not going to be charging anything, we aren't going to bill for his time. No, I would really appreciate a chance to... Because your time has ran out, a hypothetical... It hasn't run out because I've taken it all. Judge Fischer's taking your time. We'll give you time to say something, okay? Hopefully, Judge Smith, be a little generous, I can finish this hypothetical, because you mentioned that you just came out of the Federal Public Defender's Office. Let me, assuming that the judge knew that you were going to come in pro bono, so you're with the PD's office, you've got an indigent client who is resisting the advice and direction of the case that you want to move your client towards, through jailhouse lawyer type situation, your client tells you he's going to associate in an attorney pro bono, and you tell the court, I'm not comfortable with this situation, I'm not going to be able to work with this person. What happens in that instance? Because you're advocating for a Sixth Amendment constitutional right to associate in pro bono counsel, at the same time exercising the right to have appointed counsel. Would the court then make your client elect to go with the Public Defender's Office or pro bono counsel, or would the court have to go to the CJ panel and then go down the list until an attorney is found who will work with this lawyer coming out of nowhere? What would happen in that instance? It's an excellent hypothetical. In that instance, we would go to the typical effective assistance conflict determination, and if it was in fact decided that there was such a conflict of interest that couldn't work with the public defender or with the previously assigned CJ counsel, and the court made that finding that there was a conflict and it couldn't work out, then yes. What do you mean by that? Because you're saying it's the defendant's right to exercise that constitutional right. Right, because your hypothetical assumes a fundamental conflict with the federal defender's lawyer. That's the reason he's associating or she's associating in another attorney. So we've now established the underlying conflict, which then gives rise to the duty under the Sixth Amendment to appoint a second or a different counsel. There's now a conflict between primary counsel, in your hypothetical, Your Honor, federal defenders and the client. So in that case, yes, federal defenders should be relieved, must be relieved. What if there's no conflict in the Marsden sentence? Then there's no problem. He wants to associate in a lawyer who would love to get some federal trial court experience. Right. First of all, that's not me. I mean, I had considerable trial experience ahead of time, but that would be no problem. The client wants to substitute in an additional helper. And this happens all the time in the public federal defender's office. I mean, Your Honors all see the cases. Every federal defender trial that I ever did save one was with two lawyers. I mean, it happens all the time. Almost every government case and almost every federal defender case is tried with two lawyers. And if I could just have a minute to turn back. Two lawyers from the federal defender's office? Correct. Yes. Almost all. Can I pivot back to Judge Fischer's question? Assuming your reading or your potential reading, let's just say Judge Huff thought for sure we were requesting double payment, okay? Not double payment, but... That I was requesting that I wasn't pro bono. Let's go on that hypothetical. Let's just say I'm totally wrong and she misunderstood and it was my fault that she misunderstood or Mr. Warren's fault. The remedy... Remember, this is not the Court's Sixth Amendment rights. It's Ms. Gilmour. So the remedy is very easy. Mr. Burstein, if Ms. Gilmour wants you to participate, you can participate. You're not getting paid. What she can't do is what she did. From off the cuff, shut it down and say, you can't participate. You can sit there, but you can't participate. We're asking for an appointment because she said the portion of the transcript that Judge Fischer read, I've appointed you and it's just a single. So it's a single appointment. I'm not going to appoint another counsel. Yes, let's take that... Meaning at public expense. Exactly. Let's take that operating assumption. She thought we were asking for payment somehow. Let's just take that operating assumption. It's still Ms. Gilmour's Sixth Amendment right. She doesn't get to say you can't participate. But counsel, are you not creating on your own a constitutional deal? You're asking for a new trial, which would never have occurred in this situation had you not come into the situation. You have a partner who's arguably financially conflicted says, I want you to come in. Now, there may or may not have been a misunderstanding with Judge Hoppe, but taking your hypothetical, say she totally misunderstood. She thought you wanted to be paid. You're saying that that very fact creates a denial of Sixth Amendment rights to a lawyer and you're entitled to a new trial. Every defense lawyer in the country would do that in a second. If that were possible, would they not? If we can get a lot of pro bono defense counselors participating in more trials, that's a great thing. And what if we weren't partners? What if we were just shared office space? I think it's looking from my experience in trying civil cases, the district courts, in my experience, controlled how many lawyers got to stand up and trade off witnesses or split up argument or the like. We do it in this court on appeal. We don't just freely let two counsels stand up and interchange on the argument. So to what extent does your Sixth Amendment right? That's what's bothering me. Does that conflict with the trial judge's ability to control his or her courtroom? Yes. The difference with the civil cases and with this court, yes, it conflicts. Civil cases, there is no Sixth Amendment right. I understand that. I know, I know. But that's what I'm saying, Your Honor, is that that's why it conflicts. I agree with you. Yes, trial judges and certainly this court has the ability to control their courtroom. But that ability is limited by the Sixth Amendment. The limit that W.R. Grace, this court's leading case on the right of the district court to control, has to yield to the Sixth Amendment. That's what Lane Fiesta from the Second Circuit. I understand yield, but what's the rationale? You're saying the Sixth Amendment goes down to the level of a court ability to control the presentation, the orderly presentation of evidence and argument in the criminal courtroom. Yes. That would apply on appeal, I assume as well. I'm not sure that it would apply. No, because the right to appellate counsel is statutory. And if I can add to my colleague's question, and it can be triggered by someone with, at least on the face of it, a financial conflict of interest, no evidence in the record that the defendant herself actually knows of or asked for the second lawyer, right? Your Honor, if there are problems with the state of the record, we can send it back for a hearing, and we can testify under oath, truth serum, lie detector, that this was a pro bono matter. But Judge Fischer, you raised, and I'd really like to come back to it, if these two lawyers, which is how I was going to start, if Ms. Gilmour had financial means, and she had hired me and somebody else, and we both wanted to do the trial, and we were going to split up the witnesses, there is no question whatsoever that we could have done that. And was that the Second Circuit case? That's the Second Circuit case. And all of the other cases cited, Laura, that say there's no basis to distinguish between primary and local counsel. Because that's in retained. Right, but there's no reason in logic or law to distinguish between, in this context, when, assuming that it was pro bono, for the indigent person, it's not only unfair, it's unconstitutional. You're asking us to make new law, right? I'm asking you to expand the current law. This is an open question. It doesn't exist. This is a very small hybrid situation with one appointed and one pro bono. Now, I understand the record could be better on pro bono. I concede the record could be better on pro bono. But it is no less true because there was no application made for additional funding. When you came to the court that day, was it your intention to create new law? No. Create a situation where... No, it was my intention to try the case. Okay, and your appointed partner, what was he going to do? Try the case. Oh, you're both going to try the case? Yes, that was the whole point. We were going to try the case together. I was going to second chair the trial. I would have done opening. He would have done closing. I would have done half the witnesses. Typical of criminal cases, at least in the Southern District. I'll tell you what, we appreciate your argument because you are trying to make new law. I think we all want to understand this. Any other questions before we hear the government? No, no, that's fine. I'd like to hear the government. Let's hear the government. We may hear from you again. We know this has gone over a bit, but we've all been wrestling with this one. This is a tough case. It is, and it's an interesting open question. Thank you, Your Honor. Welcome to the lectern. Good morning, and may it please the court. Ajay Krishnamurthy for the United States. It seems like the court understands our position on the factual issue, which is simply that there's no evidence at all that the second lawyer in this case was either the pro bono counsel or the counsel of choice. So I wanted to start by addressing the differences between this case and the three out of circuit cases, Lane Fiesta, Laura, and Rodriguez v. Chandler. As the court's already noted, all those cases involved multiple retained lawyers. And as a practical matter, the reason that that is significant is retention is evidence that that was the defendant's lawyer of choice, which again, there's no evidence of that at all here. And it was being paid by private parties. Correct. There's no case that's factually on all fours. Has there ever been an instance that you're aware of with appointed counsel bringing in pro bono counsel to assist that trial? No. And I also would like to make clear that Ms. Gilmour's argument doesn't hinge necessarily on the pro bono aspect. What she's asking for is a right to both an appointed lawyer and a retained lawyer at the same time. Her argument hinges on the fact that the second lawyer, that is the retained lawyer, does not impact the public. I don't think that's not how I understood the argument, because if you have appointed counsel and you can afford to retain counsel, then that retained counsel has to substitute in and take over the case. The rule that, as I understand it, defense counsel's advocating for is that when you have appointed counsel, and it's clearly established that there's no counsel of choice in that situation, and you have somebody who's willing to the constitutional right to have that person associate as co-counsel. That's the way he laid out his argument. So the way that I understood it is that the argument depends on the fact that the second lawyer, which is the retained lawyer, does not impact the public fisc. That would be true regardless of whether or not that lawyer was pro bono. Is there a case law that suggests that while clearly every indigent defendant is entitled under the Constitution to have a lawyer, is there any case that says that that defendant is entitled to have any number of lawyers, 4, 5, 6, 7, 8, whatever? No. In fact, I think the case law leans the other way. In Kaplan and Drysdale, the Supreme Court said that a defendant in Ms. Gilmour's position, that is a defendant who requires appointed counsel, has no cognizable complaint as long as she has the effective representation of her attorney. And who determines that? The trial judge? So she would have to bring a claim that her counsel is ineffective. That's not something that a defendant can typically do on direct appeal. How do you respond to Judge Fisher's question to your opposing counsel to the effect that a trial judge has to control the courtroom? In this case, Judge Huff, she appointed Mr. Warren to handle the case. Apparently, from the record, and I wasn't there, but it appears she was surprised when Mr. Burstein arrived and said, you know, like, and I think he acknowledged that it's her practice to have one lawyer in each situation. I don't think there's anything unconstitutional about that, is there? No, I mean, the district court has the wide discretion, of course, to control the- So she, Ms. Gilmour, has a lawyer, a capable lawyer. The court gets surprised. There's no discussion on the record of whether there's going to be payment or not, but because of reference to CJA, the presumption is probably that. Mr. Warren has a partner. Partners usually share profits in some way. Does that bear on the right of Mr. Warren, on behalf of Ms. Gilmour, to request a second lawyer? And if so, how? So I understand your question is saying to what extent a district court's exercise of her discretion can perhaps interfere with the defendant or his lawyer's right to present his or her own defense? Well, perhaps I said it inartfully. Let me break it down. First of all, you have somebody who, at least on the surface of it, has a conflict of interest. Mr. Warren arguably was going to get paid for some work that his partner did if his partner was getting paid as well. So does that have any bearing on his ability to impliedly state that Ms. Gilmour wants him as a second lawyer? Perhaps. The conflict, in other words. Perhaps. I think that it's important to note that the only thing on the record here at all is that Mr. Warren wanted to try a case with his new colleague. I think it might be a different situation if there were some actual limitation noted in the record. And as you point out, if this conflict didn't exist. And we should stick to the record in this case, right? Of course. And I, let's clarify. I think what he's, what counsel was candidly saying, he wants to extend the right that the Second Circuit recognized in its case, where it was denial of retained co-counsel, second chair or whatever, to cross-examine a particular witness. The speaking role with the witness, which is precisely this case. And the Second Circuit said, invoke the Sixth Amendment saying you can't do that as a trial judge. I'm not sure I'm persuaded by that. It's, you know, Second Circuit. I take it seriously. But so, in any event, the predicate for the argument here is that there is no conflict because there won't be any double billing. Assume that the case. And what is the rationale for saying that Mr. Burstyn can't, who apparently could have sat second chair, literally in the courtroom, wasn't forced, as in the Supreme Court case, to couldn't even, as Justice Scalia noted, had to sit out in the audience and couldn't communicate during the trial. I read Judge Huff in this case as saying Mr. Burstyn could sit with Mr. Warren, but he couldn't stand up and make objections. They couldn't double team on objections for a witness, for example. He couldn't, they couldn't, as he suggests, split opening and close, divide that. What is the rationale for the court to deny Ms. Gilmore the benefit of two experienced attorneys? In fact, one may have more experience. I don't know. But somebody who's come right out of the FPD and obviously has experience. What is the rationale for saying that if there's no impact on the public fisc, that she doesn't have the right to effective assistance of counsel in the form of two counsel? So, someone in Ms. Gilmore's position, the defendant in Lane Fiesta, the Second Circuit case, had retained two lawyers. I understand that. He said they're extending that case principle to an indigent lawyer who is not paying for the CJA attorney and won't pay for the second attorney, nor will the public, because they won't charge for it. It's all free. I mean, the Supreme Court and this court have both said over and over again that the only Sixth Amendment right to counsel that a defendant who requires appointed counsel has is the right to the effective representation of counsel. That's why I asked you, effective counsel can be singular or plural. What I mean. So, what is the rationale for saying effective assistance of counsel where it's no impact on the public fisc in the form of two lawyers rather than one? So, Ms. Gilmore perhaps could argue that she was somehow denied the effective assistance of counsel because she had one lawyer instead of two. But of course, that requires a showing of prejudice, which she has not tried to make here and could not show on direct appeal. The reason that she frames this as a right to counsel of choice is that because that is of the two Sixth Amendment rights, that is the structural error. Yeah, I understand. No, I understand. What's the rationale for saying that they're wrong? So, as I understand it, as a general matter, what she is saying is that she has the right to both an appointed lawyer and a retained lawyer at the same time. I think as a general matter, that would be a misuse of public funds. We would be appointing lawyers for people that already had retained lawyers. And I think that's been rejected implicitly by any number of decisions, starting with Gideon and Johnson. So, what you're saying is that by their willingness to put up one of their lawyers pro bono, then she could have gotten a lawyer pro bono anyway. So, she didn't need a CGA lawyer. Correct. And there's no right to have this sort of hybrid arrangement. Does the U.S. He cited the practice apparently in Judge Huff's courtroom. Did the U.S. attorney, were you the trial attorney? I was not. As I understand it, there was one attorney on the case from the U.S. Attorney's Office. Okay. And is he correct that normally in most criminal cases in the Southern District, each side has two attorneys? I know that is the case. In many cases, I don't have an empirical answer if it's most or not. Okay. Thank you. Do you recall offhand how long this trial lasted? I think it was just one day. Thank you very much. Okay. We're good. We took you way over and we did a lot of discussion. We'll give you a minute and a half to, and we'll try not to ask too much. No, no. I welcome the questions, Your Honor. All right. Just one point, and I think the court understands, but my friend's point about you could have an appointed and a retained in the financial sense. We all know under the CJA that's not the way it works. As Judge Nguyen noted, if you have the funds, you can't ever get an appointed lawyer. That's why you have to do a financial affidavit ahead of time, and there has to be a finding that you don't qualify. If you later are found to qualify, the government claws back the money. This really is the situation of indigent defendant, appointed lawyer, pro bono lawyer. I can see the record is not as good as it could be, but the legal issue here is clear. Judge Fischer, you kept asking for an explanation as to why. What's the rationale? Common law, we're in the business of not making decisions, but making reasoned decisions. There is no rationale for denying the indigent defendant the additional assistance of voluntary counsel. Now, Judge Smith, I wanted to get back to that. That's right where I was going. Even assuming that the record shows that, why not say that this is an adequacy of representation issue? Did that denial somehow deprive Ms. Gilmore of adequate representation? Because, Your Honor, it's under Lara and Lane Fiesta, and even Gonzales-Lopez, where the second lawyer was dismissed. It's not. It's the right to have your defense team. Lane Fiesta says that this is not about effective assistance. It derives from the right to control your defense. It's a different part of the Sixth Amendment. And the last thing I'd like to just, if I could, is to address you directly on this conflict of interest. Because, obviously, it's something that gets my attention. I've been an officer of this court for a long time. I concede the record is not ideal. But I would like to look you all in the eyes and tell you that this- I don't think there's any doubt in our minds that you weren't going to, this was not a sneaky way to double bill. Okay. I'm not sure how you would have sorted out and allocated the time. It wouldn't. I mean, it's very easy. Mr. Warren would have billed the time on the trial as a normal appointed counsel, and I wouldn't have. I went to court. I went to the court, for example. I didn't bill for that time. I went to jail to visit Ms. Gilmore ahead of time. I didn't bill for that time. I mean, it's very simple. I went with Mr. Warren. He bills his time just like when I ask any lawyer on the CJA panel or federal defenders to help me with a case. They don't bill for their time. I bill for mine. So, Judge Smith, to the extent you have concerns about a conflict of interest, I'm here to tell you that that would- did not happen, would not happen, and would never happen. Just so you can sleep well, just know I'm not accusing you or your partner of this, but I used to do a lot of securities law, and I'm very steeped in conflict of interest. Okay. And the reality is there is a human element to this. Yes, Your Honor. Human beings have to make a living. And when they're lawyers, they make a living by selling their legal services. Yes, Your Honor. And if you have one lawyer who is a partner, and partners, by definition, share some of those profits, and that partner can bring someone else in, in a case without the consent of the judge, just based on a Sixth Amendment right of a defendant, there's an ability, potentially, to take money from the public fist from someone who has a conflict of interest. That really bothers me. I'm not talking about Warren. I'm not talking about you. You're honest, decent people, hardworking. You help the system a great deal. But you can understand why I'm struggling with this. This is a very tough issue for me. But in the Sixth Amendment context, it's just not going to arise, Your Honor, because these are purely indigent criminal defendants that we're talking about, and that is it. And the judge can always say, yes, second lawyer, you can stay, but you're not getting paid. Okay, but I see these all the time, non-proton orders afterwards, and they come in and they say, you know, I had that other person there, and look at all as he did. I want the court to pay him. And the court can say no. And the court routinely does. And what you're saying is, if the court says no, then maybe you've deprived someone of a Sixth Amendment right. Absolutely not, Your Honor. The court controls the purse strings. We all agree on that. What the court doesn't control is who stands at the podium and cross-examines, who makes the opening statement. In a Sixth Amendment, not in a civil case, but just in a criminal case, the court does not control that. Now, the court may say, you can't both object, or you can't both question the same witness, but the court can't fully limit the ability to participate under the Sixth Amendment if the record is not... I think we got it. I think we got it. Thank you both. You can tell we're interested in this case, and it is a very interesting, challenging issue. So thank you both for your presentation. Thank you, Your Honor. Thank you for your patience, and the court jumping all over you. No, Your Honor. I appreciate the discussion. Okay. Thank you. You got to participate after all. Yeah, exactly. Do you get a bill for this? I will bill for this, but Mr. Warren will not. Okay. All right. Thank you both. The case just argued is...
judges: Fisher, M. Smith, Nguyen